Good morning, your honors. Jason Carr, appearing on behalf of Baker in two consolidated appeal cases. I'm going to limit my comments primarily to the 202 CR 83, the Candyman e-group case, although no one can say the other case doesn't have some impact, at least on the atmospherics of it, but the Candyman case is the more robust and interesting issue, at least in my estimation. And it's a case, I don't know if I've ever encountered this situation before, that deals not just with the legal issue, but with the operative set of facts, the exact same set of facts that we're dealing with here. And what the most significant point of that is, at least in my estimation, is that virtually every single published decision that has dealt with this case has found that Special Agent Briney's statements were made in reckless disregard for the truth. And courts have found that over and over again, and in far more, after far more than one district. And I would concede that our litigation tact in the District of Nevada may have been, in hindsight, not optimal, because what the attorney attempted to do in the evidentiary hearing, the Franks hearing in this matter, was to have the Court take cognizance of the report and recommendation and the factual findings that were made in other districts, other districts where they had much more extensive hearings, where they had individuals from Yahoo testify, where they had factual materials before the Court. And probably the most, the best example of the findings that were made after the extensive hearings is put forth in United States v. Strouser, 247F2D1135. Could I ask you, though, I recognize we have kind of a panoply of cases in this area, but we also have a specific finding here that it wasn't reckless disregard in that regard. Do we review that for that particular finding for clear error, although we review the ultimate decision de novo? That, Your Honor, I would submit, no, that the standard of review would be for a Franks hearing, as and I have to hand it to the government, they probably did the best job of putting, setting it forth in their standard of review, that the, that a Franks hearing is, you review de novo, but you will review the factual findings for clear error, but whether or not the statement is made in reckless disregard would, in my estimation, be a mixed question of law and fact. Even under the judge said it wasn't reckless, would you articulate why on this record that would be clear error to make that judgment? And this is where I think the district court made the biggest mistake with its findings, is that what the court seemed to do was, was to focus on, well, how would the agent have known after he had joined the group that there were these different e-mail options? And what the court seemed to focus on is that even though he had voluminous information from Yahoo, and remember this is a year-long investigation from the time he joined the e-group, Candyman, to the time of the warrant execution in this case. They had a year to investigate this matter before they sought the warrant. But what he, what the court, our court focused on, the important recommendation was that, well, the information that was supplied from Yahoo, none of that would have tipped off the agent to the fact that there were these different e-mail options. But that ignores the fact, the highly salient fact here, is that the, the false claim that he had joined this e-group, when he joined it, he was, looked straight at a page that gave him the different e-mail options, and that he had to read through that and press join, and even more, as articulated in Strouser, and our court didn't talk about this point, is that you had to have gone in and not just press join reflectively, like the agent seemed to testify to reflectively, but you had to have So this is an interesting Frank's issue, because what we have here is a statement that we know was false, and we have to analyze whether it's false based upon the agent's testimony that, well, the reason why I kept saying the, testifying to the false thing and said the false thing in the affidavit is because I just didn't remember it right, that he, is it reckless for him to have a faulty memory about a particularly important, highly salient fact? And what's even more interesting, as the court in Strouser pointed out, is this agent, who, by the way, had no business doing this kind of investigation as it was, anyway, is that he was completely unqualified and basically a buffoon in, in, in the way he conducted these investigations, because it wasn't what he was supposed to be doing, but he did this seven other times. He, he went to seven other e-groups and signed up in the exact same way. So he saw that page that said, here are the email options for e-groups and Yahoo groups, and there's an example in the record, by the way, if you want to see what the page looks like. It's on page 314 of the excerpt of the record. He saw that page like seven, eight different times, and yet he still kept testifying under oath and in affidavits that there was no such options. Now, that comes, that comes right up to and goes over the line of what is reckless, to keep making the same mistake over and over and over again. And their only excuse is that, well, he just didn't remember it right. He says that he saw something that he did not see, and he saw it over and over again, and he still testified contrary to the state of reality. And what's important and what the Court should not lose sight of in this case is that this wrought a lot of damage. If you look at Correia's, the Second Circuit case, I mean, his affidavit, Briney's affidavit, was used for the execution of literally hundreds of warrants. The boilerplate language, the same boilerplate language that's in the affidavit that we're challenging in the case of sub judice. In Correia's, they talk about in a footnote how there were 23 search warrants executed, but very few prosecutions. And then why is that? Because the Yahoo evidence for the Candyman group showed that 85% of the people who went to this site, who joined this site, did not get the email from this site. That the overwhelming majority of people who signed up to this site did not get the email and did not receive the pornographic email that was so important to the affidavit that the agent represented that our client received and that every person received who joined this group. So, while I still have some time, let's talk about step two of the Franks v. Delaware formulation, which is the government's stronger argument, in my opinion. Which is, if we excise the false information, is there still enough to warrant a probable cause determination? The first point I'd like the Court to reiterate to the Court is that, unlike the usual examination of a search warrant affidavit like we see in the case, which is important to this case, clearly, this Court does a de novo review of the warrant. Because when you have to excise parts out, no longer do we give deference to the lower court's determination. It's not a fly specking endeavor anymore, because we do not know what the lower court would have done if the proper portion had been excised, if they made a determination without the false information. So we have to do a de novo review of this, what's left after we take out the fact that the FBI really had no evidence that our client had received any pornography at all from this site. So what they had, in fact, the evidence is to the contrary. So what they had was that he, this individual who had these salacious, but not necessarily, he had these email names that were certainly in poor taste, and had a sexual connotation, but not a child pornography sexual connotation. And I don't want to repeat them, but he had email types that were definitely sexist in nature. That was one piece of evidence that the FBI had. The second is that he joined this group. This brings us right within the parameters of what was discussed in Gordy. In Gordy, the en banc opinion, this court found that membership in a email group that was a paid membership, not an email group, an actual paid website. That when an individual paid for that and stayed a member, and it was clear that the website had child pornography, and that was the only purpose of the website, that that's enough for probable cause. I would submit that this case is different because, A, it's not a paid website where you have to enter your credit card information. You have to take further steps to join the website. It was a much more casual endeavor. You went to the email option pages, pressed join, and you were a member. Did not have to pay to retain membership. Also, if you chose the no email option, there would really be no onus to go back in and disassociate yourself from the eGroup. Because if you did not get the emails and you never visited again, you'd have no more association with it. Unlike the Lolita Girls that was discussed in Gordy, where you were still being charged, your credit card was still being charged $20 a month. And so if you joined Lolita Girls and you looked at it and said, whoa, I don't want any of this, this is illegal, I don't want any part of it. You certainly had a far bigger onus to disassociate yourself to terminate the membership. And also, I would note that there's a difference in the fact that Candyman, as some of the cases like Correa's talk about, it had legitimate First Amendment purposes. It wasn't just all about child pornography. There was a chat group, there were polls. And while it's kind of repugnant that people would get together and talk about a highly distasteful endeavor like, well, we should make child pornography legal. That is still permissive on the First Amendment for people to engage in that conversation. All right. Thank you very much, counsel. We'll hear from the government. May it please the Court. My name is Jeffrey Tao for the United States. Let me begin by addressing some of the Court's questions directed towards counsel as to the review of the recklessness and deliberateness finding that actually would be a clear error review as to that finding as well. And that is found in the Martinez-Garcia decision at 397 F. 3rd, 1205, particularly at page 1216, note 5. In addition, so your Honor, given that standard of review, I believe your Honor is correct. The relevant question is not what the courts in other decisions found, but what this court found was that the district court took the opportunity to view live testimony, judge credibility for itself, and it found not only that Agent Binney was credible in his testimony and that his explanations were credible, but that he did not act recklessly or deliberately. For that reason, the district court should affirm because the district court did not clearly err in those findings. I'm trying to recall myself in using the Internet to, say, subscribe to the Washington Post online or the New York Times online or Slate magazine, if I've ever encountered a page that did not specifically ask about whether I wanted to receive advertisements from all of their friends, what they wanted my name, if it was okay to send my name out to their sponsors, et cetera, and I can't think of one. If we look at the probable cause to support the first search and exclude the automatic download assertion, what do we have? First of all, was there any, did the agent have any information that would suggest that Mr. Baker was involved in child pornography up to that point? Your Honor, at that point, there was no indication that Mr. Baker had actually downloaded any child pornography that they were aware of. However, under the principles of the Gordy decision, as well as the Froman decision, which addressed the, in the Fifth Circuit, which addressed the same website, the same welcome page, and the same misrepresentations and omissions at issue, the principles of those cases make clear that regardless of whether there are any actual, there's any evidence of actual download at the time of the search warrant affidavit, probable cause can still exist. And under those cases, as in here, what we have is the appellant taking an affirmative step to join a website or e-group which had a predominantly illicit purpose. As the Froman court described the Candyman e-group, it said that it had a singular purpose of downloading illicit pornography. And I don't believe it's been ---- How would one know that? Your Honor, that would be ---- I'm sorry. Excuse me. If one came upon this site by accident, how would one know that? Well, Your Honor, as the Froman court concluded, the welcome page to the Candyman website, although not explicit, nonetheless, and I'm paraphrasing here, but I believe it said that it announced to anyone who would join the purpose of the site. And I believe that's correct. If you ---- the welcome page to the website is not explicit, but in context, it certainly does signal the intent of the site. So if someone came upon this site, whether by choice or by accident, typing in the wrong URL or whatever, and saw it, and then closed it down, never visited the site again, would there be probable cause to search the computer? Well, Your Honor, that would certainly be one possible explanation as to, for example, what happened with the appellant. But the mere fact that there are instant explanations does not negate probable cause. So the question is whether there's a fair probability that someone who took affirmative steps to join a site with a singular purpose of illicit pornography took affirmative steps by ---- Is there about the opening page of this site that says that its primary purpose is illicit child pornography? Your Honor, in addition to having a name such as the Candyman, which certainly has its own connotation, you have references not only to the ability to get pics and vids, but also pics and vids of any type, which I don't know what types of pics and vids there are of other people's children that people would want to see, but the fact that it's pics and vids of any type in order to see ---- and the site announces a purpose for people who love children. And this, of course, would be strangers' children. So in the totality, it certainly ---- in the totality and in context, it certainly does announce to anyone who would join that it's more than just an innocent site to share photography. Well, in answer to Judge Hawkins' question, then, you would say that the accidental landing on this site and then going on to someplace else, just getting out of it, would not be enough. Is that correct or what? I wasn't sure you directly answered it. I'm not sure you directly answered Judge Hawkins' question. Oh, I apologize, Your Honor. Your Honor, that would be enough, because the same steps, the same inferences that would support ---- assuming that that's all we know about it, is that someone joined and that ---- It wasn't the question. I'm sorry. You happen upon it, inadvertently look at it, and for whatever reason close it down and go on to read the New York Times online. Would that be probable cause to search the computer? If you remain a member until the site is shut down and ---- No, no, no. Please take member off the table. Okay. I'm sorry. I'm surfing the web and I, for one reason or another, I come upon the site and I see it and for whatever reason I decide to close it down and move on and do other things. That's all I've done is open up the site. Is that enough? Oh, I apologize, Your Honor. No, it would not be, because you're not taking an affirmative step to actually gain unlimited access to the site as Appellant did in this situation. So in your hypothetical, Your Honor, I don't believe it would be enough for probable cause. Okay. So what distinguishes this case is that he joined? Is that he took affirmative steps to join, that he had sexually suggestive screenings, multiple ones, which, although not child-centric, at the very least suggests that he would understand what the coded codes in the welcome page might suggest in terms of ---- But does this site, or did it, I understand, Yahoo took it down. Yes. Did this site have a preview section or something like that? I don't believe that it did, Your Honor. I believe my understanding is that upon getting to the welcome page, you see the three line or four line welcome page and the name of the candy man, of course, and then only upon taking the affirmative steps to join would you actually see the offending material, I believe. But once you join, you see it automatically? I believe that's true, Your Honor, although the actual content of the site is not in the record. But my understanding, based upon the various descriptions of it, is that you would ---- you would, given the primary purpose of it and the ---- you would be ---- you actually would see that there would be a number of different sections, including the file section, which was the primary ---- which, as the affidavit asserts, is the primary function of it. There's also chats and links. Whether you would see something immediately, I'm not 100 percent certain, but based upon the descriptions of the site and the various decisions as being predominantly for child pornography, I believe that probably would be the case. It's pretty important, isn't it? Yes, Your Honor, it is. But all I can say to that, Your Honor, is that, for example ---- So I understand it fully. There is there or is there not anything in the record that would say if I come up on this site, affirmatively join, that the next time I access it, I'm going to see, Your Honor, I don't know the answer to that, Your Honor. It does not appear to be in the record. It's pretty important, isn't it? Yes, Your Honor. Well, actually, the Frohman ---- given that the Frohman court described the singular purpose of the site as the download of child pornography, then that would certainly suggest that that is the answer. Would your answer be the same if one joined and then the next time they accessed it, there was nothing on the site that was actual child pornography? I would have to click on something else or download something else? Well, Your Honor, under the principles of the Gore decision, it would seem fair to infer that people join things in order to access the contents of them. And here, the idea of joining a site and then not ---- there seems to be a reason that someone wanted to actually take an affirmative step to join a site would be to actually partake in the content of the site. And that seems to be the inference that the Frohman court made. But we don't know that. We don't know that, Your Honor, no. In addition, Your Honor, and also to clarify something also that was discussed earlier, similar to the Candyman site, the Gore ---- actually, the website at issue in the Gore decision also was a mixed-use site as well. I just wanted to make sure that that was clear for the record. And that is evident from the panel decision, Your Honor, where it refers to it as a mixed-use site. Unless the Court has any further questions, that concludes my presentation. Thank you, counsel. The case just argued will be submitted for decision. And we will hear argument now in United States v. SDI, Future Health.
judges: O'scannlain, Hawkins, McKeown